IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:23-cr-00902 |
| | |
| v. | 18 U.S.C. § 2(a) |
| | 15 U.S.C. § 78m(b)(2)(A) |
| | |
| | INFORMATION |
| JEFFREY ALAN BENJAMIN | |

THE UNITED STATES ATTORNEY CHARGES:

1.    JEFFREY ALAN BENJAMIN was employed by Westinghouse (WEC) as its Senior Vice President for New Plants and Major Projects. In that position, he oversaw the construction of WEC's nuclear reactors worldwide, including Units 2 and 3 at the V.C. Summer site (the V.C. Summer Project).

2.    SCANA Corporation ("SCANA") was a publicly traded company engaged in electric and natural gas utility operations and other energy-related businesses. SCANA's stock was listed on the NYSE. SCANA was registered with the SEC to sell securities. As a publicly traded company, SCANA maintained records of its financial activities, including publicly available SEC filings.

3.    SCANA was the majority owner of the V.C. Summer Project with a 55% stake, along with the South Carolina Public Service Authority ("Santee Cooper"), which held the other 45% ownership interest (collectively, the "Owners").

4.    In October 2015, Westinghouse, SCANA, and Santee Cooper signed an Amended EPC Agreement establishing, among other things, that (i) the Owners had the option to convert the contract to a fixed price, which would shift the risk of any cost overruns or delay to Westinghouse ("Fixed Price Option"); (ii) Westinghouse guaranteed substantial completion dates of August 2019 and August 2020 for Units 2 and 3, respectively, subject to liquidated damages for missing those targets ("August/August Schedule"); and (iii) Westinghouse agreed to pay additional liquidated damages if either new unit was not substantially complete by December 31, 2020.

5.    On or about May 26, 2016, SCANA elected to exercise the Fixed Price Option.

6.    On September 26, 2016, JEFFREY ALAN BENJAMIN attended a meeting with SCANA's Chief Executive Officer, Kevin Marsh, and Chief Operating Officer, Stephen Byrne, among others, including executives of Santee Cooper. According to Byrne's contemporaneous notes of that meeting, Marsh asked JEFFREY ALAN BENJAMIN about the contractually guaranteed substantial completion dates for the V.C. Summer Project: "Do you know anything today that tells you [the] dates [are] not achievable?" According to Byrne's notes, JEFFREY ALAN BENJAMIN responded, "No, nothing today." Byrne's notes further indicate that JEFFREY ALAN BENJAMIN told SCANA that the current Westinghouse construction schedule was targeting completion for Unit 2 in November 2019 and Unit 3 in July 2020, contingent on successful mitigation efforts. Finally, Byrne's notes reflect that JEFFREY ALAN BENJAMIN told the Owners that Westinghouse was "working mitigation" on the Unit 2 Shield Building, Fluor's ETC inputs were expected by the end of October, and the Owners could expect a revised schedule by the end of the year.

7.    Although JEFFREY ALAN BENJAMIN informed the Owners that Westinghouse was then forecasting delayed completion in November 2019 and July 2020 and still working on a revised schedule, he failed to adequately convey the risk associated with meeting the August/August schedule.

8.    Following the September 26, 2016, meeting between the Owners and Westinghouse, SCANA prepared to file securities disclosures for the third quarter of that year. JEFFREY ALAN BENJAMIN was not involved in drafting or discussing SCANA's securities disclosures, just as he was not involved in drafting or discussing any of SCANA's regulatory filings, including its submissions to the Public Service Commission.

9.    On November 4, 2016, SCANA filed a Form 10-Q with the SEC for the quarterly period ending on September 30, 2016, which filing contained the following disclosure:

> In a discussion of the project status on September 26, 2016, and in response to [SCANA's] specific questioning regarding work crew efficiency and productivity and schedule mitigation efforts, WEC executive management stated that it had no reason to believe that the August 2019 and August 2020 guaranteed completion dates would not be met. WEC submits monthly schedule updates, however, and it has reported that there are significant risks to achieving the current guaranteed substantial completion dates. WEC has also reported that it is continuing to develop detailed mitigation plans to address those risks.

10.    Representatives of SCANA knew that the company's November 10-Q was materially inaccurate in violation of 15 U.S.C. § 78m(b)(2)(A) and their obligations as officers of a public company. Despite JEFFREY ALAN BENJAMIN'S failure to adequately convey the risk associated with meeting the August/August schedule, the Owners had already concluded that

2

Westinghouse lacked credibility on the construction schedule and that August/August completion was not realistic.

11.    JEFFREY ALAN BENJAMIN was aware that SCANA was a publicly traded company, and he only became aware of SCANA's November 2016 10-Q sometime after its public release.

12.    JEFFREY ALAN BENJAMIN also became aware that SCANA's November 2016 10-Q contained material misrepresentations regarding the status of the construction, including materially misrepresenting his statements at the September 26 meeting and omitting the risk associated with meeting the August/August schedule. Whereas JEFFREY ALAN BENJAMIN told SCANA that he was not aware of any reason achieving the contractually guaranteed substantial completion dates would be impossible, SCANA told its investors that Westinghouse had represented that it had no reason to believe the August/August Schedule would not be met. Further, SCANA's statement to investors that completion was anticipated in August 2019 and August 2020 misrepresented the information that SCANA had received from Westinghouse regarding the best-case scenario targeting November 2019 and November 2020 completion dates. Moreover, SCANA's November 2016 10-Q failed to disclose that the project was unlikely to be completed on the August/August schedule.

13.    JEFFREY ALAN BENJAMIN knew that SCANA's senior executives were aware of the falsity of SCANA's November 2016 10-Q because it contradicted the information that he knew they received when they attended the September 26 meeting with JEFFREY ALAN BENJAMIN, Santee Cooper executives, and others. He also knew that SCANA's November 2016 10-Q failed to disclose accurately the risk to the August/August schedule known to Mr. Benjamin and to SCANA.

14.    JEFFREY ALAN BENJAMIN also understood that, by virtue of the Fixed Price Option, Westinghouse would bear the financial cost of any delay on the Project or departure from the August/August schedule, not SCANA or its investors.

15.    Thereafter, JEFFREY ALAN BENJAMIN never notified authorities of SCANA's inaccurate books and records; but, instead, he chose not to use his position as a senior executive of Westinghouse to cause Westinghouse to inform the Owners adequately about the risk associated with meeting the August/August schedule.

## COUNT 1

(Aiding and Abetting the Violation of 15 U.S.C. § 78m(b)(2)(A))

16.    Paragraphs 1-14 are incorporated herein by reference.

3

17.    SCANA was an issuer of a class of securities registered under Section 12 of the Securities Exchange Act of 1934, and it was required to file reports under section 15(d) of Exchange Act. Under federal law, SCANA and its officers had a duty to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflected the transactions and dispositions of the assets of the company.

18.    SCANA and its executives knowingly kept inaccurate books and records that did not fairly reflect the transactions and dispositions of SCANA's assets—including specifically the November 4, 2016, Form 10-Q for the quarterly period ending on September 30, 2016, that materially mispresented information about the V.C. Summer Project construction schedule—in violation of Title 15, United States Code, Section 78m(b)(5).

19.    JEFFREY ALAN BENJAMIN was aware that SCANA's November 4, 2016, Form 10-Q was inaccurate and that SCANA had a legal obligation to maintain accurate books and records, including Forms 10-Q. Nevertheless, JEFFREY ALAN BENJAMIN failed to use his position as a senior executive of Westinghouse to cause Westinghouse to adequately disclose the risk associated with meeting the August/August schedule and thereby prompt SCANA to make corrective disclosures.

All in violation of Title 18, United States Code, Section 2(a) and Title 15, United States Code, Section 78m(b)(2)(A).

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

By: _____

BROOK B. ANDREWS (#10231)
First Assistant United States Attorney
WINSTON D. HOLLIDAY, JR. (#7597)
WILLIAM J. WATKINS, JR. (#7863)
Assistant United States Attorneys
WILLIAM E. SCHURMANN (PHV)
Trial Attorney
1400 Main St., Ste. 500
Columbia, South Carolina 29201
Phone: 803-929-3000
Email: brook.andrews@usdoj.gov

4